UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERTA WOODWARD[1]
      Plaintiff,

    -vs-                            Case No.  2:05-cv-552-FtM-34-DNF

MICHAEL J. ASTRUE[2],
Commissioner of Social Security,
         Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on the Plaintiff's application for Disabled Widow's Benefits filed on July 10, 2001.[3] (Tr. 49-51). The Plaintiff's application was denied on September 26, 2001, and a request for reconsideration was filed on October 16, 2001. (Tr. 29-32, 39-40). The application was again denied on January 4, 2002, and the Plaintiff timely filed a request for hearing on February 28, 2003. [Tr. Tr. 33-36, (Tr. 43-44). The hearing was held on December 11, 2003, and the Plaintiff received an unfavorable decision on January 29, 2004. (Tr.

---

[1]    The Plaintiff is the widow of the deceased wage earner, who died fully insured on August 21, 1999. The Plaintiff and the wage earner were legally married until his death. The Plaintiff is not presently married.

[2]    Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should, therefore, be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[3]    The claimant meets all of the non-disability requirements for Disabled Widow's Insurance Benefits as set forth in Section 202(e) of the Social Security Act.

226-261, 10-22).  The Plaintiff filed a request for review on October 14, 2004 which was denied by decision of the Appeals Council on September 23, 2005.  (Tr. 5-7).  For the reasons set forth below, it is respectfully  recommended that the Commissioner's decision be **AFFIRMED**.

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memorandums. This case is now ripe for review under section 205(g) and 1631(c) of the Social Security Act, 42 U.S.C. . § § 405(g), 1383(c)(3).

### I.   Social Security Act Eligibility,
### the ALJ Decision, and Standard of Review

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his/her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511.  The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The initial hearing before Administrative Law Judge Ruben Rivera, Jr., was held on December 11, 2003.  The Plaintiff, her attorney , and Vocational Expert, Dr. Everett Tessmer were present.  The ALJ entered his decision on January 29, 2004, (Tr. 13-22), finding the Plaintiff not disabled

At Step 1, the ALJ found the Plaintiff had met all of the non-disability requirements for Disabled Widow's Insurance Benefits as set forth in Section 202(e) of the Social Security Act. The Plaintiff's prescribed period began August 21, 1999, and expired on August 21, 2006. The Plaintiff has not engaged in substantial gainful work since February 19, 2001. At Step 2, the ALJ concluded that the Plaintiff has cervical and lumbar strain, an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations. 20 C.F.R. § 404.1520(b)). [Tr. 21]. At Step 3, the ALJ found these impairments did not meet or equal, either alone or in combination, with any other impairments the criteria set forth in Appendix 1, Subpart P, Regulations No. 4. [Tr. 21]. The ALJ also determined that the Plaintiff's allegations regarding her limitations were not fully credible. [Tr. 21]. At Step 4, the ALJ determined the Plaintiff has the residual functional capacity for a full range of medium work activities. The ALJ determined the Plaintiff can lift up to 50 pounds and 25 pounds frequently and stand and walk for up to six hours in an 8-hour workday. The ALJ found no non-exertional limitations that would significantly erode the Plaintiff's occupational base. At Step 5, the ALJ determined the Plaintiff's past relevant work as a cook did not require the performance of work-related activities precluded by her residual functional capacity and her medically determinable impairments. Accordingly, the ALJ found the Plaintiff was not disabled.

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is more than a scintilla and

is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. <u>Crawford</u>, 363 F.3d at 1158. Even if the evidence preponderates against the Commissioner's findings, the Court must affirm if the decision reached is supported by substantial evidence. <u>Crawford</u>, 363 F.3d at 1158-59. The Court does not decide facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005).

## II. REVIEW OF FACTS AND CONCLUSIONS OF LAW

### A.   Background Facts:

The Plaintiff was born on December 13, 1945, and was 57 years old at the time of the hearing. [Tr. 230]. The Plaintiff has a high school education. The Plaintiff's past relevant work experience has been as a prep cook and grill cook, with responsibility of full kitchen duties. [Tr. 57]. The Plaintiff alleges disability following an automobile accident on February 19, 2001, in which she was driving when another vehicle collided with her. This accident caused her to experience pain in her back, neck, legs and hands. [Tr. 15].

The Plaintiff was originally seen by Roger A. Bohn, D.C.., of the Bohn Chiropractic Clinic on February 27, 2001, as a result of the accident. The Plaintiff presented with severe and constant neck and back pain, spasms, and discomfort with radiation of the shoulder and toes. The Plaintiff advised all conditions are exacerbated when she coughs, sneezes, bends or lifts anything. The Plaintiff's x-rays taken on February 26, 2001, was: "negative for any fracture, dislocation, or gross osseaous pathology.   Impression: Sprain/strain syndrome of the cervical and lumbar spine.   Hyperflexion/hyperextension injury to the cervical spine".   It was recommended that the Plaintiff receive therapeutic care three times per week. The treatment

4

would consist of; spinal adjustment, spinal manipulation and appropriate adjunctive therapy. Consultation notes reflected the Plaintiff was being referred to a neurologist and an MRI should be performed. The notes further indicated that the patient's prognosis was poor for a full recovery. [Tr. 96-98].

On February 28, 2001, the Plaintiff was seen by Edward F. Figueroa, M.D., of the Non-Operative Spine, Pain and Neuromuscular Center. Dr. Figueroa's Impression: "This patient presents with symptoms and clinical findings suggestive of the following diagnostic possibilities: Lumbar/Cervical Intervertebral Disc Displacement, Lumbar/Cervical Foraminal Stenosis, Lumbar/Cervical Radiculitis [Radiculopathy, Peripheral Neuropathy, Lumbar-Cervical Spondylosis, Lumbar-Cervical Facet Joint Syndrome, Bilateral Shoulder impingement Syndrome, tension headaches, left temporomanibular joint pain, ? (sic) Left eye visual problems, left ear pain, and Myotendinous/Ligamentous Pain component]". [Tr. 109]. The Plaintiff was given a prescription for no [sic] work from February 28, 2001, through her next appointment. The doctor was to consider additional imaging studies, and a therapeutic home exercise program . The Plaintiff was to do use the home Electric Stimulation unit on a trial basis, and soft tissue injections, spinal injections and additional intervention on an as needed basis. The Plaintiff was scheduled for a follow-up appointment. [Tr. 109].

The Plaintiff began treatment with Dr. Sharon Johnston, a neurologist on April 5, 2001. Dr. Johnston's noted Plaintiff suffered from post-traumatic cervical strain with left upper extremity radicular symptoms, lumbar strain and headaches. The Plaintiff underwent physical therapy and was prescribed medication. On April 11, 2001, Dr. Johnston recommended continued physical therapy and suggested epidural injections. [Tr. 117-119].

The Plaintiff underwent an MRI of the cervical and lumbar spine on April 11, 2001 which revealed: "the marrow signal and alignment of the cervical vertebral segments is within normal limits. Posterior fossa is within normal limits." A cervical disc bulge was seen at C3-C4 with prominent osteophytic changes. The C5-C6 disc level showed a disc bulge with osteophytic changes and mild bilateral neural involvement. The C7-T1 levels were within normal limits. The Plaintiff was released to return to work but was advised not to lift more than 20 pounds. [Tr. 124-128].

Dr. Johnston noted in her May 2, 2001, report that the Plaintiff had tried to work for four hours but was in too much pain to continue working. [Tr. 116]. The Plaintiff was then instructed to continue on her pain medications and continue with her physical therapy. Dr. Johnston certified the Plaintiff as totally incapacitated from May 2 through May 28, 2001. [Tr. 120-123]. On May 15, 2001, the Plaintiff received a lumbar epidural injection at the L2/3 epidural space to relieve her lumbar radicular pain. [Tr. 125]. After reviewing the results of the Plaintiff's MRI on June 78, 2001, Dr. Johnston opined that the Plaintiff was at Maximum Medical Improvement with a permanent disability rating of thirteen (13) percent.

The Plaintiff was admitted to Health Park Medical Center on June 22, 2001, with cough, chest pain and chest congestion. The Plaintiff underwent an electrocardiogram which showed normal sinus rhythm and non-specific ST-T wave changes. The lung scan showed low probability for pulmonary embolism. The Plaintiff was seen by a cardiologist and a Cardiolite stress test was performed. She had a negative stress test. She was released on June 25, 2001, after being given medications for her cough and chest congestion and was advised to follow-up at the Family Health Center. [Tr. 129].

The Plaintiff continued to be treated at Family Health Centers of Southwest Florida from June 26, 2001 to November 27, 2001. [Tr. 172-180]. During that time period the Plaintiff was seen for a myriad of complaints. She was seen on July 31 and October 2, 2001, respectively because of the cramping of her hands and legs. The Plaintiff was assessed with left cubital tunnel syndrome and possible side effects from her medications. [Tr. 174, 178]. She was also diagnosed with gastroesophageal reflux disease and hypertension. The Plaintiff was admitted to the hospital on October 2, 2001, with abdominal pain. The emergency room ran a complete work up. The Plaintiff had a normal CBC, pt/PTT, BMP, liver function tests, amylase, lipase and cardiac enzymes. An abdominal series was benign. The EKG showed normal sinus mechanism without any ischemia or ectopy. The ultrasound was limited but showed the upper right quadrant to be benign. The Plaintiff was released in stable condition. [Tr. 192-193].

The Plaintiff was seen by Dr. Johnston on January 7, 2002, for her continued severe pain and advised that she needed her pain medication to get her through the day. Dr. Johnston "discussed in great detail the effects of addiction". The Plaintiff at this time was on Darvocet N 100 #60, on an as needed basis. [Tr. 215]. At a follow-up visit on September 9, 2002, the Plaintiff advised she was seeing a physician in Fort Myers for her physical problems. The Plaintiff advised she was still in pain because of her back. The subject of addiction was again discussed. [Tr. 216]. At the December visit in 2002, Dr. Johnston noted that the Plaintiff was working only two to three hours a day and in the May 30, 2003, progress notes, Dr. Johnston noted that the Plaintiff was able to work "a few hours" while taking her medications. [Tr. 214-220].

On February 23, 2003, Dr. Johnston completed a Physical Capacity Evaluation Form

7

and a Pain Interrogatory Form.  The doctor indicated the Plaintiff can stand/walk for less than one hour, sit for two hours in an eight-hour day, lift and carry less than 10 pounds and that she did not recommend that the Plaintiff do any lifting.  Dr. Johnston felt that the Plaintiff can use her hands for repetitive grasping, handling, fine manipulation and fingering but cannot push or pull due to her pain. [ Tr. 221-222].  The Plaintiff is restricted from using her feet repetitively due to her back pain and unable to kneel, squat, crawl or climb ladders.  The Plaintiff is limited to only occasional bending or climbing stairs.  These limitations stem from Plaintiff's status post-traumatic spine injury.  Further, Dr. Johnston advised the Plaintiff takes medications on a daily basis and found the Plaintiff's complaints of pain to be credible.  Dr. Johnston reiterated this assessment again on November 17, 2003. [Tr. 211-13].

**ISSUE I**

**The ALJ Erred by Finding the Plaintiff Capable of the Full Range
of  Medium Work and By Giving Little Weight to the Treating
Physician's Opinion.**

The Plaintiff contends that the ALJ erred by failing to give proper weight to the treating physician's  opinion,  specifically Dr. Sharon Johnston. The weight afforded a medical sources opinion on the issue(s) of the nature and severity of a Plaintiff's impairments depends upon the examining and treating relationship the medical source had with the Plaintiff, the evidence the medical source presents to support her opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source, and other factors.  20 C.F.R. § 404.1527(d).  The opinion of a physician, even a treating physician,  may be discounted when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if  the opinion is inconsistent with the record as a whole. Id. *Crawford*, 363 F.3d at 1159-60; *Phillips*, 357 F.3d

8

at 1240-41.  Moreover, opinions on some issues, such as whether a claimant is disabled, the assessment of a claimant's RFC, and the application of vocational factors, "are not medical opinions. . . .but are, instead, opinions on issues  reserved  for the Commissioner because they are administrative findings that are dispositive of the case.  20 C.F.R. § 404.1527(e).  Under the regulations, the Commissioner is ultimately responsible for making the determination or decision about whether [the claimant] meet[s] the statutory definition of disability. . . .  A statement by a medical source that [the claimant is] "disabled" or "unable to work" does not mean that [the Commissioner] will determine that [the claimant is] disabled."  20 C.F.R. § 404.1527(e).

Statements from medical sources about what a claimant can still do are relevant evidence, they are not determinative, as the ALJ has the responsibility of assessing a claimant's RFC.  20 C.F.R. § § 404.1513(b), 404.1527, 404.1546(c); SSR 96-5p.  The ALJ may reject an opinion that is so brief and conclusory that it lacks persuasive weight or is unsubstantiated by any clinical or laboratory findings.  *Hudson v. Heckler*, 755 F.2d 781, 784 (11th Cir. 1985).

A review of the ALJ's decision shows that the ALJ reviewed the objective evidence, including  the findings of the treating physician.  When evaluating Dr. Johnston's opinion in regard to the Plaintiff's assessed limitations, the ALJ did not find the Plaintiff's statements to be consistent with the evidence of record.  The hospital record of October 2001, indicated that the Plaintiff denied headache and neck pain and there was no neurological complaint.  There was no tenderness in the neck or decreased range of motion.  All the extremities exhibited normal range of motion.  Further, Dr. Johnston's assessment is inconsistent with her own treatment records.  The record consistently indicates  no motor deficits and the Plaintiff had a stable gait.  The MRI showed only degenerative changes, no herniation, no cord impingement and no stenosis.  In

9

April/May of 2001, Dr. Johnston indicated the Plaintiff could return to light work and although the Plaintiff alleges complete disability, she continued to work part-time for a year and a half as a cook.  These  findings were specifically noted and considered by the State Agency physician who concluded that even with the Plaintiff's medical condition, she could still occasionally lift 50 pounds and frequently lift 25 pounds, with no other limitations on standing, sitting or walking. The State Agency physician found the Plaintiff to have no postural limitations, manipulative limitations, visual limitations, communicative limitations or environmental limitations.  He found the  Plaintiff to be  morbidly  obese with  the complaint of  neck and  back pain, but found her neurological exam to be normal.  He further found the Plaintiff to be only partially credible and that she should be able to do medium work. [Tr. 202-210].  Thus, the ALJ did not find that Dr. Johnston's opinion had controlling weight in this instance.  The Plaintiff's argument is without merit.

**ISSUE II**

**The Plaintiff's Alleged Evidence Concerning the Vocational Expert Warrants Remand**

The Plaintiff contends in this case that it should be remanded because the vocational expert [VE] who testified in this case was removed from the rotation of available VE's because of alleged unprofessional conduct.  The VE's removal was almost one year after the ALJ had rendered his decision. The Plaintiff argues that because this event happened close to the time of the Plaintiff's hearing, the testimony of the VE in this case is suspect and the case should be remanded so additional VE testimony can be obtained.

A court may consider new evidence submitted to the Appeals Council or the Court only to determine if the additional evidence satisfies the criteria for remand pursuant to sentence six

of 42 U.S.C. 405(g). *Falge v. Apfel,* 150 F. 3d, 1320, 1323 (11th Cir. 1998). To satisfy the criteria for a remand under sentence six of 42 U.S.C. 405(g), a claimant must establish that (1) the evidence is new, non cumulative; (2) the evidence is material such that a reasonable possibility exists that it would change the administrative result, and (3) there was good cause for failure to submit the evidence at the administrative level.

The Plaintiff has not shown to this Court, how the removal (approximately 10 months after the ALJ decision) has any effect on the testimony presented by the VE in this case or how it would have changed the ALJ's decision. The ALJ in this case did not rely exclusively on the VE testimony. The ALJ concluded that the Plaintiff could return to her past relevant work as a cook, and this conclusion does not require VE testimony. The testimony of a VE is only required to determine whether the Plaintiff's RFC permits her to do other work after the Plaintiff has met her initial burden of showing that she cannot do past work. *Schnorr v. Bowen*, 816 F.2d 578 (11th Cir. 1987).

The Plaintiff has failed to show that her allegations concerning the VE in this case are material or could in any way change the administrative result. The ALJ found that the Plaintiff could perform her past relevant work even without the assistance of the VE testimony. Therefore, substantial evidence of record supports the conclusion that the Plaintiff could return to her past relevant work particularly as she performed this job in the past. The ALJ's decision is supported by substantial evidence.

11

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, it is respectfully recommended that the decision of the Commissioner be **AFFIRMED**.

Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 6.02 within ten days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this ___16th___ day of March, 2007.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies:

To All Counsel of Record

12